IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOSEPH BACHEWICZ et al., )
)
        Plaintiffs, )
)
   v. ) No. 10 C 3875
)
PREFERRED DEVELOPMENT, INC., )
et al., )
)
        Defendants. )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motions to dismiss. For the reasons stated below, the motions to dismiss are granted.

## BACKGROUND

Plaintiff Joseph Bachewicz (Bachewicz) is allegedly the President and sole shareholder of Plaintiff Revenue Sharing Corporation (RSC). Plaintiffs allegedly formed a partnership with Defendant Preferred Development, Inc. (Preferred), Defendant Evan Oliff, and Defendant Thomas Morabito (collectively referred to as "Preferred Defendants") to develop Walgreens stores and other retail sites together in

1

a territory presided over by Walgreens' representative Brent Circle (Circle Territory). During discussions, the Plaintiffs and Preferred Defendants allegedly entered into certain oral agreements and later decided to draft written agreements for the partnership. Defendant Grant McCorkhill (McCorkhill), an attorney working for Defendant Holland & Knight, LLP (Knight) (collectively referred to as "Knight Defendants"), was allegedly hired to draft and review the partnership documents. During the drafting process, the parties allegedly entered into further oral agreements. The parties allegedly finally entered into a written Memorandum of Understanding (MOU).

The parties allegedly then proceeded to develop certain Walgreens store sites. While the parties worked under the MOU, the parties allegedly agreed to certain minor modifications of the MOU. According to Plaintiffs, Preferred Defendants then allegedly attempted through fraud to cut Plaintiffs out of the partnership to develop Walgreens sites. Specifically, Preferred Defendants allegedly instructed Bachewicz to work on non-Walgreens related deals so that Preferred Defendants could take over the position of being the main contact with the Walgreens' representative. Preferred Defendants also allegedly failed to work exclusively with Plaintiffs to develop Walgreens sites in the Circle Territory. Preferred Defendants also allegedly shifted expenses from their non-Walgreens projects onto certain Walgreens projects, thereby

2

reducing the net profits on the Walgreens projects. Preferred Defendants also allegedly concealed business information from Plaintiffs, failed to pay Plaintiffs amounts owed for one deal, wrongfully forced Plaintiffs to sell their ownership share in one deal at an unfair price, and unjustly enriched themselves by using Bachewicz to conduct some initial research for a certain deal.

Preferred Defendants also allegedly committed fraud upon Walgreens, which was a customer with whom Bachewicz allegedly spent decades building a business relationship. Preferred Defendants also allegedly committed bank fraud against LaSalle Bank. Preferred Defendants were allegedly able to obtain a mortgage from LaSalle Bank by allegedly making certain misrepresentations regarding certain values.

Knight Defendants, acting as legal counsel for the partnership, allegedly acted in concert with Preferred Defendants and McCorkhill. McCorkhill allegedly made misrepresentations to Plaintiffs. Bachewicz's reliance on statements allegedly made by McCorkhill allegedly enabled Defendants to perpetrate the alleged fraud. McCorkhill also allegedly falsely led Bachewicz to believe that he represented Bachewicz.

Plaintiffs include in the second amended complaint fraud claims brought against Preferred Defendants (Count I), breach of fiduciary duty claims brought

3

against Preferred Defendants (Count II), breach of contract claims brought against Preferred (Count III), unjust enrichment claims brought against Preferred Defendants (Count IV), an accounting claim brought against Preferred Defendants (Count V), a rescission claim (Count VI), fraud claims brought against Knight Defendants (Count VII), aiding and abetting claims brought against Knight Defendants (Count VIII), legal malpractice claims brought against Knight Defendants (Count IX), claims against Preferred Defendants and McCorkhill brought under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.* based on bank and wire fraud (Count X), and RICO claims against Preferred Defendants and McCorkhill based on Knight's alleged involvement in the conspiracy (Count XI). Preferred Defendants and Knight Defendants have filed motions to dismiss.

## LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) (Rule 12(b)(6)), a court must "accept as true all of the allegations contained in a complaint" and make reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)(stating that the tenet is "inapplicable to legal conclusions"); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). To defeat a Rule 12(b)(6) motion to dismiss, "a complaint must

contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (internal quotations omitted)(quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that contains factual allegations that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 129 S.Ct. at 1949 (internal quotations omitted).

Federal Rule of Civil Procedure 12(b)(1) (Rule 12(b)(1)) requires a court to dismiss an action when it lacks subject matter jurisdiction. *United Phosphorus, Ltd. v. Angus Chemical Co.*, 322 F.3d 942, 946 (7th Cir. 2003). If the concern of the court or party challenging subject matter jurisdiction is that "subject matter jurisdiction is not evident on the face of the complaint, the motion to dismiss pursuant to Rule 12(b)(1) would be analyzed as any other motion to dismiss, by assuming for purposes of the motion that the allegations in the complaint are true." *Id.; see also Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995)(stating that when reviewing a motion to dismiss brought under Rule 12(b)(1), the court "must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff"). However, if the complaint appears on its face to indicate that the court has subject matter jurisdiction, "but the contention is that there is *in fact* no subject matter jurisdiction, the movant may use affidavits and other material to

support the motion." *United Phosphorus, Ltd.*, 322 F.3d at 946. For the purpose of determining subject matter jurisdiction, the court "'may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Ezekiel*, 66 F.3d at 897 (quoting *Capitol Leasing Co. v. Federal Deposit Insurance Corp.*, 999 F.2d 188, 191 (7th Cir. 1993)). The burden of proof in regards to a Rule 12(b)(1) motion is "on the party asserting jurisdiction." *United Phosphorus, Ltd.*, 322 F.3d at 946.

## DISCUSSION

I. RICO Claims

Defendants argue that Plaintiffs have failed to state valid RICO claims. Defendants contend that Plaintiffs brought the instant action in state court and that this case was proceeding in state court for over two years before removal to federal court by Defendants. Defendants contend that they filed a motion for summary judgment in this case in state court and, instead of responding to the motion for summary judgment, Plaintiffs amended the complaint. Defendants argue that Plaintiffs, when faced with dismissal of the action based on Defendants' motion for summary judgment, suddenly depicted this action as a RICO action in an amended

complaint. Defendants contend that Plaintiffs have taken what is a garden-variety breach of contract and malpractice case and added statements about fraud in order to refer to racketeering activities under RICO and portray this action in a more ominous manner. Defendants also contend that Plaintiffs are seeking to gain certain damages enhancements available under RICO.

A. Standing

Defendants argue that Plaintiffs have not shown that they have standing to bring RICO claims premised on any predicate acts of mail fraud and bank fraud involving Walgreens and LaSalle Bank. In addition to the requirements of Article III standing, "there are prudential limitations on a federal court's power to hear cases." *RK Co. v. See*, 622 F.3d 846, 851 (7th Cir. 2010). One type of prudential standing limitation on parties is "the principle that the named plaintiff cannot sue in federal court to assert the rights of a third party." *Id.* Unlike Article III standing, "[p]rudential standing issues are subject to waiver." *Id.* (holding "that 'real party in interest' is a defense subject to waiver").

Plaintiffs include allegations in the second amended complaint indicating that fraud was perpetrated against Walgreens and LaSalle Bank. Plaintiffs do not dispute, however, that they lack standing to bring any RICO claims premised on fraud

allegedly perpetrated against Walgreens and LaSalle Bank. (Ans. Pref. 33). Nor have Plaintiffs shown that Defendants have waived the standing objection in this case. Thus, any claims premised on alleged fraud against Walgreens and LaSalle Bank must be dismissed for lack of standing.

### B. Pleading with Particularity

Defendants also argue that Plaintiffs have failed to plead the predicate acts of fraud for the RICO claims with particularity in accordance with Federal Rule of Civil Procedure 9(b) (Rule 9(b)). Pursuant to Rule 9(b), all claims that "sound[] in fraud" must be pled with particularity. *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007)(internal quotations omitted). Rule 9(b) is applicable to RICO claims that are premised on allegations of fraud. *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992). In order to plead a claim with particularity, a plaintiff must allege the "who, what, when, where, and how" of the fraud. *Borsellino*, 477 F.3d at 507 (internal quotations omitted). The Seventh Circuit has also explained in regard to RICO claims, that "[a]lthough Rule 9(b) requires that a RICO plaintiff provide only a general outline of the alleged fraud scheme-one sufficient to reasonably notify the defendants of their purported role in the scheme-the complaint must, at minimum, describe the predicate acts with some

8

specificity and 'state the time, place, and content of the alleged communications perpetrating the fraud.'" *Midwest*, 976 F.2d at 1020 (quoting *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co.,* 927 F.2d 988, 992 (7th Cir. 1991)). In the instant action, Plaintiffs have failed to allege the specific false misrepresentations that formed the basis for the alleged wire fraud. Plaintiffs provide only general allegations regarding false misrepresentations and telephone conversations upon which Plaintiffs allegedly relied. (SA Compl. Par. 349, 357, 371). *See Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994)(stating that "loose references to mailings and telephone calls in furtherance of a purported scheme to defraud will not do" and "[i]nstead, the plaintiff must, within reason, describe the time, place, and content of the mail and wire communications, and it must identify the parties to these communications")(internal quotations omitted).

In regard to the alleged bank fraud, Plaintiffs argue that they pled the "who, what, when, where, and how" for the bank fraud in paragraphs 174-191 and 206 of the second amended complaint. (Ans. Law 21). However, such allegations do not specifically identify the alleged misrepresentations. Nor do such allegations contain any information as to when the alleged misrepresentations were made that formed the basis for the alleged bank fraud.

Plaintiffs' allegations also fail to specifically allege fraudulent conduct.

9

Plaintiffs point to various allegations, many of which merely suggest that Defendants did not honor their obligations under the MOU, rather than fraud. *See, e.g., U.S. ex rel. Main v. Oakland City University*, 426 F.3d 914, 917 (7th Cir. 2005)(stating that "failure to honor one's promise is (just) breach of contract, but making a promise that one *intends* not to keep is fraud")(emphasis in original). Thus, Plaintiffs have failed to plead the RICO claims with particularity.

### C. RICO Pattern of Activity

Defendants also contend that Plaintiffs have failed to allege facts plausibly suggesting a pattern of racketeering activity under RICO. RICO provides the following:

> "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity;

18 U.S.C. § 1961(5). RICO does not protect "against isolated or sporadic criminal activity" and the courts have held that "a civil RICO plaintiff may no longer get by merely alleging two predicate acts, but must also satisfy the so-called 'continuity plus relationship' test: the predicate acts must be related to one another (the relationship prong) *and* pose a threat of continued criminal activity (the continuity

prong)." *Midwest Grinding Co., Inc.*, 976 F.2d at 1022. To meet the "continuity element in a closed-ended case, the plaintiff must prove a series of related predicates enduring a 'substantial period of time.'" *Id.* (stating that "[t]he underlying rationale is that the duration and repetition of the criminal activity carries with it an implicit threat of continued criminal activity in the future"). The Seventh Circuit has also indicated that courts should try and "curb widespread attempts to turn routine commercial disputes into civil RICO actions" by "carefully scrutiniz[ing] the pattern requirement to forestall RICO's use against isolated or sporadic criminal activity. . . ." *Jennings v. Auto Meter Products, Inc.*, 495 F.3d 466, 472-73 (7th Cir. 2007)(internal quotations omitted).

In the instant action, Plaintiffs do not include facts that indicate the alleged RICO conspiracy is ongoing and thus this case would be a close-ended case. Plaintiffs have not provided allegations in the second amended complaint addressing the continuity requirement for RICO. In fact, the allegations included in the second amended complaint suggest only a short-term business dispute rather than a continuing long-term criminal conspiracy that would be governed by RICO. Thus, Plaintiffs have not pled sufficient facts to suggest a pattern of racketeering activity.

### D. True Nature of Action

Defendants argue that the instant action is properly characterized as a garden-variety breach of contract action rather than as a RICO case. The dispute in this action arises out of breaches of the terms of the MOU. Plaintiffs cannot turn this case into a RICO case simply by recasting breach of contact claims and malpractice claims as conspiracies of deception and fraud. This case proceeded in state court for two years involving a contractual dispute. Plaintiffs have not sufficiently explained how the circumstances in this case changed after two years and Plaintiffs uncovered the alleged racketeering conspiracy. Plaintiffs cannot plead a RICO claim merely by entitling counts as RICO claims or by presenting boilerplate legal conclusions.

The Seventh Circuit has cautioned courts against allowing RICO to "becom[e] a surrogate for garden-variety fraud actions properly brought under state law" or "trying to fit a square peg in a round hole by squeezing garden-variety business disputes into civil RICO actions." *Midwest Grinding Co., Inc.*, 976 F.2d at 1022, 1025. That is exactly what Plaintiffs have done in the instant action. Thus, the RICO claims pled in this case are merely an artful rephrasing of the state law claims that were being litigated in state court, and the RICO claims are merely redundant claims in this case. Therefore, based on the above, the motion to dismiss the RICO claims (Counts X and XI) is granted.

II. Remaining Claims

Having resolved the federal claims in this case, we must determine whether to continue to exercise supplemental jurisdiction over the remaining state claims. The parties indicate that this court has federal question subject matter jurisdiction over the RICO claims and has supplemental jurisdiction over the state claims. (Joint Juris. 1). Once the federal claims in an action no longer remain, a federal court has discretion to decline to exercise supplemental jurisdiction over any remaining state law claims. *See Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1252 (7th Cir. 1994)(stating that "the general rule is that, when all federal-law claims are dismissed before trial," the pendent claims should be left to the state courts). The Seventh Circuit has stated that there is no "'presumption' in favor of relinquishing supplemental jurisdiction" and that a court may retain jurisdiction where a statute of limitations would bar future suits, where "substantial federal judicial resources have already been expended on the resolution of the supplemental claims," and "where it is obvious how the claims should be decided." *Williams Electronics Games, Inc. v. Garrity*, 479 F.3d 904, 906-07 (7th Cir. 2007). The Seventh Circuit has stated that, In exercising that discretion, the court should consider a number of factors, including "the nature of the state law claims at issue, their ease of resolution, and the actual, and avoidable, expenditure of judicial resources. . . ." *Timm v. Mead Corp.*, 32 F.3d

273, 277 (7th Cir. 1994). We have considered all of the pertinent factors and, as a matter of discretion, we decline to exercise supplemental jurisdiction over the remaining state law claims. Thus, this action properly can be resolved in the state court where the action has already proceeded for two years up to the dispositive motion stage. Therefore, we dismiss all remaining state claims without prejudice.

## CONCLUSION

Based on the foregoing analysis, we grant Defendants' motion to dismiss the RICO claims. We also decline to exercise supplemental jurisdiction over the remaining state claims and we dismiss the remaining state claims without prejudice.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: June 28, 2011